## CARL C. ABINGTON, Appellant v. J. H. HARWELL, Respondent.

St. Louis Court of Appeals. Opinion Filed April 8, 1919.

1. **OFFICERS: County Collector: Quo Warranto: Res Judicata: Right to Office.** Where a *quo warranto* proceeding was brought on the information of the Attorney-General and not at the relation of plaintiff and he was not a party to the record, his right to the office was not in judgment as such, and his title thereto was not passed upon.

2. ———: ———: **Qualification: Official Bonds: Failure to Give Bond: Fees.** Under sections 1134 and 11440, Revised Statutes 1909, requiring every collector of the revenue before entering upon the duties of his office to give bond to the State to the satisfaction of the county court, etc., a county collector of revenue appointed by the Governor did not become *de jure* collector of the revenue, and was not entitled to the fees and emoluments of that office until his bond was finally approved.

Appeal from Cape Girardeau Court of Common Pleas.— *Hon. John A. Snider,* Judge.

AFFIRMED.

*W. T. Rutherford* and *Abington & Phillips* for appellant.

(1) The Supreme Court in banc in the case of State ex inf. John T. Barker, Attorney-General, v. H. I. Duncan, J. H. Harwell et al., 265 Mo. 26, 175 S. W. 940, not only held that the defendant J. H. Harwell was illegally exercising the duties of the office of Collector of the Revenue of Butler county, in Poplar Bluff Township thereof, and ousted him from such office, but the opinion also held that the plaintiff herein, Carl C. Abington, was the legally appointed Collector of the Revenue of Butler county, Missouri. State ex inf. Attorney-General v. Duncan et al., 265 Mo. 49, 175 S. W. 947. (2) By filing a demurrer to a pleading, all facts pleaded therein are admitted to be true. See Dodson v. Lomax, 113 Mo. 551; Bergin v. St. Louis, 131 Mo. 26; Goodson v. Goodson, 140 Mo. 206; Shields v. Johnson County, 144 Mo. 76; Anadle v. Land, Etc., Co., 128 S. W. 38, 144 App. 303; State ex rel. v. Sheppard, 192 Mo. 497; McKinzie v. Matthews, 59 Mo. 99; State ex rel. v. Aloe, 152 Mo. 466. (3) The decision and opinion of the Supreme Court that the plaintiff Carl C. Abington was legally entitled to hold the office of Collector of the Revenue of Butler county, Missouri, was within the issues made by the pleadings (see replication of the Attorney-General, appellant's abstract of record, page 49). But, even if this court believed that said opinion was unauthorized and was for the wrong party, still, this court would be bound to follow it "as the last and controlling decision of the Supreme court on the subject." Harburg v. Arnold, 87 Mo. App. 326; Thompson v. Irwin, 76 Mo. App. 418; Sage v. Reeds, 17 Mo. App. 210; Constitution of Missouri, Sec. 6, Art. 6; State ex rel. v. Broaddus, 238 Mo. 139, 142 S. W. 340. (4) It was not necessary for the plaintiff to bring a suit of

some kind to establish his rights to the office of Collector of the Revenue of Butler county, Missouri, before instituting this suit against the defendant to recover from him the fees which he was illegally retaining. The defendant admitted facts sufficient in the *quo warranto* proceedings in the Supreme Court to authorize that court in holding, as it did hold, that the plaintiff Abington was the legally appointed Collector of the Revenue of Butler county. Plant Seed Co. v. Seed Co., 23 Mo. App. 579; Sec. 1804, R. S. 1909; Springfield, etc., v. Donovan, 147 Mo. 622; Williams v. Railway Co. 112 Mo. 463. (5) This circuity of action which respondent insists in the lower court should be taken is the very result that the Code of Civil Procedure seeks to avoid. It was the object of the Code of Civil Procedure, and this object is being effectuated more and more by the modern decisions of the Appellate Courts, to avoid circuity of action and unnecessary litigation where such results can be accomplished. See, in this connection: Lane v. Dowd, 172 Mo. 167; Martin v. Turnbaugh, 153 Mo. 172; Padgett v. Smith, 206 Mo. 303; James v. Groff, 157 Mo. 402. Under the old common-law pleading circuity of action was not only not frowned upon, but was, in fact encouraged. For a long while after the State of Missouri adopted the code the courts still hung on to the old idea of things and still tried to encourage circuity of action. As illustrative of this, take the case of Lambert v. Blumenthal, 26 Mo. 471, and Gott v. Powell, 41 Mo. 416, in both of which cases it was held that partition would not lie against one in possession of land asserting exclusive title thereto, but that the party out of possession must first bring his action of ejectment, try his title, and, after he had won that case, then he must institute his suit then for partition. When these cases were decided the courts were still in the shadow of the common-law pleadings. Grimes v. Miller et al., 221 Mo. 636, 121 S. W. 21. (6) Defendant conceded plaintiff's title to the office of Collector of the Revenue

201 M. A.—22

of Butler county, Missouri, and his right to the office, by delivering over the books and possession of the office on the 1st day of May, 1915, from which date until the — day of March, 1917, plaintiff performed the duties of Collector of the Revenue of said county. Of this fact this court can take judicial notice. Mayes v. Palmer, 206 Mo. 297. If, however, this court should feel disinclined to take judicial notice of the fact that Abington took charge of the office of Collector of the Revenue of Butler county, Missouri, on the 15th day of April, 1915, as admitted in defendant's answer, and that he continued to exercise the duties of said office until his term expired on the 1st day of March, 1917, then counsel for appellant suggests to this court that such is the facts, and, this court declining to take judicial notice thereof, there rsults a *hiatus* of proof in the case, and this cause should be reversed and remanded to the lower court for this proof to be made. See, in this connection: Finnegan v. Railroad; 244 Mo. 662; Ordelheide v. Wabash Ry., 80 Mo. App. 369. (7) Plaintiff's petition states a good cause of action for money had and received. Clifford Banking Co. v. Commission Co., 195 Mo. 288; Henderson v. Koenig, 192 Mo. 709; Harrison v. Lakeman, 189 Mo. 598; Johnson-Brinkman Co. v. Bank, 116 Mo. 568; Sanitary Co. v. Reed, 179 Mo. App. 170; Early v. Railroad Co., 167 Mo. App. 259; Paper Co. v. Publishing Co., 156 Mo. App. 198; Jenkins v. Gloppon, 141 Mo. App. 92; Roberts v. Neale, 134 Mo. App. 617; Stout v. Hardware Co., 131 Mo. App. 520; 528; Crigler v. Duncan, 121 Mo. App. 391; Harrison v. Murphy, 106 Mo. App. 573 (for money collected); Richardson v. Drug Co., 92 Mo. App. 520; Kelly v. Osborn, 86 Mo. App. 244; Deal v. Bank, 79 Mo. App. 269; Clark v. Bank, 57 Mo. App. 285. (8) Plaintiff was the *de jure* Collector of the Revenue of Butler county, Missouri. As a result thereof he was entitled to perform the functions of the office and to receive the fees and emoluments thereof.

The defendant collected these fees and emoluments and he is responsible to plaintiff, the *de jure* officer, for them, and, therefore, the plaintiff in this case is entitled to recover from the defendant the fees which the defendant collected and retained while acting as collector. State ex rel. v. Clark, 52 Mo. 508; State ex rel. v. Gordon, 245 Mo. 28; State ex rel. v. McAllister, 31 S. W. 679; In re Berger's Estate, 133 S. W. 96, 152 Mo. App. 663; State ex rel. v. Babcock, 106 Mo. App. 72. (9) The Supreme Court held in the case of State v. Duncan et al., cited supra, that when a majority of all the votes cast upon the subject were against township organization and said vote was cast up and declared by the county court of Butler county that township organization in said county immediately ceased. Said court therefore rendered judgment ousting defendant from the office of Township Collector of Poplar Bluff Township. The law is that when an office is abolished, such as Township Collector, as in the instant case, that the former incumbent of said office cannot continue performing its duties, and as a result of such unlawful performance collect and retain fees for so doing. See in this connection: Stanfield v. Bexar County, 28 S. W. 114; State v. McAllister, 31 S. W. 679; 23 Am. & Eng. Encyc. of Law (2 Ed.), 398; 29 Cyc, p. 1424. (10) Defendant attempted to defend this action in the lower court upon the ground that in retaining the books of the collector and collecting the taxes as he did, and retaining the commissions which he did, that he was acting in good faith; that is, that he thought, under the law, that he was entitled to do so. In other words, his defense is that he acted in good faith and was ignorant of what the law was on the subject. This defense, of course, is not available to the defendant, for it is fundamental that ignorance of the law excused no man. State v. St. Louis Club, 125 Mo. 308, 319. (11) As between the plaintiff and the defendant in this case, the fact that the defendant officiously performed the duties of the

office of Collector of the Revenue of Butler county, Missouri, within Poplar Bluff Township, and that the plaintiff did not perform such duties, gives the defendant no claim against plaintiff for compensation rendered for performing said duties. But to the contrary, the plaintiff can recover from the defendant the fees which he collected and retained for performing the duties of collector. 29 Cyc, 1424. (12) Defendant was not a *de facto* officer for reason that the office of Township Collector of Poplar Bluff Township, Butler county, Missouri, was discontinued and abolished, as the result of the general election held in said county on the 3rd day of November, 1914. Sec. 9, Art. 9, Constitution of Missouri; Chapter 119, R. S. 1909. (13) Defendant herein, after the result of the general election held in said county on the 3rd day of November, 1914, was lawfully ascertained, was not and could not be a *de facto* Collector of the Revenue of said township, because that office had been abolished and discontinued at the election aforesaid, and without a *de jure* office there cannot be a *de facto* officer. Ex parte Bob Snyder, 64 Mo. 58; State v. O'Brien, 68 Mo. 153; Norton v. Shelby County, 118 U. S. 425, 30 L. Ed. 178; 29 Cyc, 1391. (14) As a part of the general history of the State, the court will take judicial notice of the tenure of office of local officials. 16 Cyc, 869, 900; McCarty v. Johnson, 20 Tex. Civ. App. 184; Ellis v. Ruldin, 12 Kan. 306; Templeton v. Morgan, 16 La. Ann. 438; New York v. Vandeveer, 91 N. Y. App. 303, 86 N. Y. S. 659; Campbell v. Dewick, 20 N. Y. Eq. 186; State ex rel. v. Seibert, 130 Mo. 221. Courts judicially notice appointments to office by the Governor, the date of accession to and the term of office. 16 Cyc, 901, 902; Martin v. Attman, 80 Wis. 150; Alexander v. Burnham, 18 Wis. 199; Mayes v. Palmer, 206 Mo. 298, 299; Bristol v. Fischel, 81 Mo. App. 367; Deiner v. Chronicle Pub. Co., 230 Mo. 630; State ex rel. v. Wright, 251 Mo. 325.

*L. M. Henson* and *Sheppard & Sheppard* for respondent.

(1) Answering appellant's Points and Authorities 1, in which it is claimed that the case of State ex inf. Attorney General v. Duncan, et al., 265 Mo. 49, passed upon the rights of appellant to said office, respondent says that the opinion in that case did not pass upon appellant's rights to hold the office, nor could it have done so. The only point which may be determined in a *quo warranto* proceeding, instituted by the Attorney General upon his own information, is the right of respondent to the office. No inquiry can be made into the right of any other person to said office. Appellant was not a party to the record in that case, and could not have been, because said proceeding was instituted upon the information of Attorney General and not at the relation of appellant or anyone else. Therefore, appellant's right to said office was not, and could not have been, determined in said proceeding. Hunter v. Chandler, 45 Mo. 452; State ex rel. v. Gordan, 245 Mo. 30-31.: Mullery v. McCann, 95 Mo. 579, 582; State rel. v. Vail, 53 Mo. 97; State ex rel. v. Townsley, 56 Mo. 107; State ex rel. v. Ross, 161 Mo. App. 671. (2) Answering Point Number 2 of appellant's Points and Authorities, we need only say that the authorities cited thereunder do not support the text of the point in any respect. It is true that the holdings all are that a demurrer admits all facts well pleaded, but there was no duty cast upon respondents in the *quo warranto* case to file a demurrer to the Attorney General's reply, or to move to strike out any part thereof. There is no pleading, under the rule in this State, required to be filed to a reply at all. If this point is well taken, then the Supreme Court of Missouri, in the *quo warranto* case, should have rendered judgment on the pleading, which it did not do. (3) Replying to Point number 3 of appellant's Points and Authorities, we desire to repeat what we have said in reply to Point Number 1, that is to say, the Supreme Court, in the *quo warranto*

proceedings, did not. and in fact, could not, pass upon the title of appellant, Carl C. Abington, to the office of County Collector, in that case. (See cases cited under Points and Authorities Number 1.) (4) Appellants' Point Number 4 is virtually a restatement of Point Number 2, and need not be further noticed except to say again that respondents admit nothing by failure to demurrer or file a motion to strike out the reply of the Attorney General in the Supreme Court. (5) Answering appellant's Point Number 5, respondent contents himself with re-stating that in a *quo warranto* proceeding instituted by the Attorney General of the State upon his own information, the only point which can be passed upon by the court is the right of respondent to the office. The right of some third party to the office cannot be adjudicated in that case. Appellant was not a party to the *quo warranto* proceeding, and his rights, therefore, cannot be adjudicated in that case. (See Points and Authorities under Points and Authorities 1.) (6) It is a sufficient answer to Point Number 6 in appellant's Points and Authorities to say that respondent admitted nothing either in the trial of the *quo warranto* proceeding, or in the trial of this case, or by turning over the books to the county court in obedience to the mandate of the Supreme Court ousting him from office. (7) Answering appellant's Point Number 7, respondent submits that the petition filed herein does not state a cause of action, but wholly fails to state facts sufficient to constitute such cause of action. (8) Answering appellant's Point Number 8, under his Points and Authorities, respondent says that appellant was not *de jure* collector of the revenue of Butler County, Missouri, until on and after the 15th day of April, 1915. Therefore, he was not entitled to the fees and emoluments of that office until after that date. Respondent has not collected any of the fees or emoluments of that office since that date. Sections 11434, 11440, R. S. 1909; 29 Cyc., 1387; 23 A. & E. Ency. of Law, 361; McMillin v. Richards, 45 Nebr. 786, 791-2; 64 N. W. 242; Ex Parte Craig, 130 Mo. 590; Dicker-

son v. City of Butler, 27 Mo. App. 9, and cases cited; Stuhr v. Curran, 44 N. J. L. 181; State v. Carrol, 38 Conn. 449; Hunter v. Chandler, 45 Mo. 452; Section 11684 R. S. 1909. (9) Answering appellant's Points Number 12 and 13 in his Points and Authorities, in which it is stated that respondent was not a *de facto* officer because the office of Collector of Poplar Bluff Township, Butler County, Missouri, had been discontinued, respondent submits that it is no concern of appellant whether respondent was a *de facto* officer or not. The facts show clearly that appellant was not entitled to the fees and emoluments until April 15, 1915. It is, therefore, no concern of his what became of the fees prior to that time. Probably the leading case in the United States on the question of who is a *de facto* officer is the case of State v. Carrol, found in the 38 Conn. 449, which holds that there can be a *de facto* officer even though there is no office. The Supreme Court of this State has held likewise in the case of Adams v. Lindell, 72 Mo. 198.

BECKER, J.—Plaintiff sued the defendant below for $1268.58 as for money had and received to plaintiff's use. The case was tried to a jury. At the close of the case the court directed a verdict for the defendant, and plaintiff appeals.

The facts in the case may be briefly summarized as follows. On November 5, 1912, township organization was by a vote of the people adopted in Butler county, Missouri, and the defendant, J. R. Harwell, was thereafter, in March, 1913, duly elected to the office of township collector of Poplar Bluffs Township in said county. The question of discontinuing township organization was resubmitted to a vote of the people of Butler county at an election held November 3, 1914, at which election there were cast "for township organization" 943 votes, and "against township organization" there were cast 1357 votes. The votes cast against "township organization" not being a majority of all the votes cast at said election, the proper officers of the county

declared the proposition of discontinuing township or-
ganization in said county defeated, relying upon section
11745, Revised Statutes of Missouri. 1909, which pro-
vides that to carry a proposition to abolish township
organization requires a "majority of all the votes cast
at said election."

On November 28, 1914, the Governor of Missouri
having been advised of the result of said election, and
believing that section 11745, in so far as it required a
majority of all votes cast at a general election to dis-
continue township organization was unconstitutional,
and that said section in so far as it attempts to confer
on the county court the authority to appoint someone
to fill the office of Collector of Revenue therein, was un-
constitutional as being in contravention of section 9 of
article 9 of the State Constitution, which provides that
to carry such proposition at a general election it need
only receive "a majority of all of the votes cast upon
that question," by virtue of the power and authority
vested in him by section 5828, Revised Statutes of Mis-
souri, 1909, and section 2 of article 5 of the Constitu-
tion of the State of Missouri, appointed and commis-
sioned the plaintiff, Carl C. Abington, Collector of
Revenue for said Butler county, a vacancy in said office
having been created by said election.

On December 1, 1914, the county court of Butler
county, believing it had the right to appoint the Col-
lector of Revenue of Butler county to fill the vacancy
in such office, acting under section 11745, Revised Stat-
utes of Missouri, 1909, appointed Harry I. Duncan Col-
lector of the Revenue of Butler county. Duncan
immediately qualified, by filing his bond, which was
accepted by the county court, and by taking the oath
of office.

On December 1, 1914, the said Abington also pre-
sented to the county court of Butler county his bond
as Collector of the Revenue of said Butler county, said
bond being in the sum of $120,000, which bond the coun-
ty court refused to approve, the record of said court
showing that its ground for refusing to approve such

bond was that the county court had the right to appoint the Collector of Revenue and not the Governor of the State.

On December 17, 1914, said Abington executed a new bond in the sum of $125,000 upon the ruling of the State Auditor of Missouri to the effect that the bond of the Collector of Revenue of Butler county should be in a sum not less than $123,000. This latter bond filed by said Abington was eventually approved by the county court on April 15, 1915.

Some time during the month of December, 1914, a *quo warranto* proceeding was instituted by the Attorney-General of the State upon his own information, and not at the relation of any party, in the Supreme Court of the State of Missouri, against the defendant Harwell, said Harry I. Duncan, I. H. Barnhill, County Treasurer of Butler County, as well as eight other persons who had been elected township collectors in the county of Butler at the same election that Harwell had been elected. Harwell and the eight other township collectors had continued to use, hold and exercise their respective offices as township Collectors of the Revenue after the election of November 3, 1914, asserting their right to so continue on the ground that the proper officers of the county had declared the proposition of discontinuing township organization in Butler county to have been defeated in the election of November 3, 1914.

The *quo warranto* was brought by the Attorney-General for the purpose of determining the rights of the said Harwell, Duncan, et al., to the offices of township collectors and Collector of Revenue of Butler county. The Supreme Court in an opinion handed down April 2, 1915, held that section 11475 which required a "majority of all the votes cast at said election" to vote out township organization in a county which has once legally adopted it, is contrary to section 9 of article 9 of the Constitution which requires only a "majority of all the votes cast upon that question" to reject township organization and that to that extent the statute was invalid; therefore at the election of

November 3, 1914, Butler county had voted to discontinue township organization. The Supreme Court further held that the county court had no power or authority to appoint a county collector, but that duty devolved upon the governor in that so much of section 11745 as declared that in case township organization is discontinued "the county court shall appoint such county officers as is provided for by law for counties not under township organization" is contrary to the provision of section 9, article 9 of the Constitution declaring that in such cases "all laws in force in relation to counties not having township organization, shall immediately take effect, and be in force in such county," and clearly contemplates that the general statute authorizes the Governor to fill vacancies in such county officer as that of county collector. The Supreme Court therefore held that Duncan had not been legally appointed to the office of Collector of County Revenue. It follows that the Supreme Court issued its writ of ouster as against said Duncan, Harwell, et al. [See The State ex inf. John T. Barker, Attorney-General v. H. I. Duncan, et al., 265 Mo. 26, 175 S. W. 940.]

During the interval from the 3rd day of November, 1914, the date of said election, and the 15th day of April, 1915, the date upon which said Abington's bond as Collector of the Revenue of said county was approved, and up to the time the *quo warranto* proceeding in the Supreme Court was finally determined, the said Harwell continued collecting the revenue in said township and he retained the commissions allowed by law on all funds collected by him during said period of time, which fees amounted to $1268.58. For said fees plaintiff sued defendant below, and at the trial the court directed the jury to return their verdict for defendant. From the judgment rendered upon the directed verdict plaintiff appeals.

I.

It is earnestly contended by appellant that the case of State ex inf. Barker, Attorney-General, v. I. H. Dun-

can, et al., supra, is decisive of this case in that it was therein held that the power and authority to fill the vacancy created by the vote of November 3, 1914, was vested in the Governor and as appellant had been appointed Collector of the County by the Governor under said decision, appellant is entitled to the fees sued for in this case.

An examination of that case, however, discloses that the information was by the Attorney-General on behalf of the State, and not at the relation of the appellant. Under such circumstances it was held, in an opinion written by WAGNER, J., in Hunter v. Chandler, 45 Mo. 453, that "the private rights of a third party claiming the office are not determined or passed upon. The State, acting through its law officers, does not establish the rights of private persons to an office; it only maintains its own dignity and protects the public interests by ousting those who usurp or intrude into office and unlawfully exercise its franchises. Where a private person wishes to have his right to an office adjudicated, the statute points out the course to pursue. It provides that the information shall be prosecued at his relation and shall be proceeded upon in such manner as is usual in cases of *quo warranto*. . . . Had the Attorney-General proceeded with the information filed by him to a final determination, the judgment would have fixed the rights of the defendant to the office, but not those of the plaintiff. The plaintiff was no party to the record, the information was not at his relation and his title could not have been passed upon." [See, also, State of Mo. ex rel. Jas. H. Vail, Relator, v. Geo. B. Clark, State Auditor, 52 Mo. 508; Mullery v. McCann, 95 Mo. 579, 8 S. W. 774; State ex rel. v. Gordon, 245 Mo. 12, l. c. 30, 31, 149 S. W. 638.] That is the precise situation before us. The information was not brought at the relation of plaintiff and he was not a party to the record and therefore his right to the office was not in judgment as such, and his title thereto was not passed upon in said *quo warranto* proceeding brought on the information of the Attorney-General.

The defendant's answer, however, admits that plaintiff "was appointed Collector of Butler county, Missouri, on the 28th day of November, 1914, but denies that he qualified or took possession of said office until the 15th day of April, 1915," and "that at the time said collections were made neither the plaintiff herein nor any other person had qualified as collector of the revenue of said county, as required by law;" such admission would make it unnecessary for plaintiff to prove his right or title to the office if he were suing for fees which had been collected on and after the 15th day of April, 1915, the date upon which defendant admits plaintiff qualified as collector of the revenue of the county, but the answer cannot in any view be construed as an admission on the part of the defendant that the plaintiff was the Collector of Revenue of said county for the period of time during which the fees sued for herein were collected by the defendant, namely from November 8, 1914 to February, 1915, but is a distinct averment to the contrary. In this connection we call attention to sections 11434 and 11440, Revised Statutes of Missouri, 1909, by which every Collector of Revenue shall, before entering upon the duties of his office, give bond to the State "to the satisfaction of the county court," such bond to be executed in duplicate, one part thereof to be deposited and recorded in the office of the clerk of the county court, and the other part to be transmitted by the clerk to the State Auditor; the auditor, if he finds the bond to be made in conformity to law and the sureties satisfactory, "shall file the same in his office and immediately certify the fact thereof to the clerk of the county court, and if the auditor does not find the bond sufficient in law or the sureties satisfactory, he shall immediately return the bond to the clerk of the county court," and "no tax book or lists shall be placed in the hands of the county collector until the auditor's certificate, under the seal of the office, has been received by the clerk of the county court, showing that the collector's bond had been received and filed in the auditor's office."

The first bond submitted to the county court, on December 2, 1914, by the appellant, was rejected by it on the ground that the Governor of the State had no authority to make the appointment but that under the Statute, section 11745, such authority was vested in the county court.  It further appears that the first bond was not in sufficient amount, and on December 17, 1914, the appellant presented a new bond to the county court which was finally approved on April 15, 1915; thereupon the tax book or lists were turned over to him. Prior to that time the defendant continued to act as Collector of the Revenue in his township under the authority of his election as such, his successor not having been duly appointed and qualified.

In light of these facts we rule that appellant did not become *de jure* Collector of the Revenue of Butler county, Missouri, until on and after the 15th day of April, 1915, from and after which date he was entitled to the fees and emoluments of that office and it appearing that the fees sued for herein all having been collected prior to April 15, 1915, the learned trial judge properly directed the jury to return a verdict for the defendant.  The judgment is accordingly affirmed.

*Reynolds, P. J.,* and *Allen, J.,* concur.