THE STATE ex inf. JAMES H. TALBOTT, Prosecuting Attorney, ex rel. CHESTER WAPLES et al., v. MISSISSIPPI & FOX RIVER DRAINAGE DISTRICT and JOHN BUSCHLING et al., Appellants.

Division One, March 14, 1922.

1. **DRAINAGE DISTRICT: Incorporation: Jurisdiction: Quo Warranto.** In a proceeding in *quo warranto*, brought by the State on the information of the prosecuting attorney, to test the validity of the incorporation of a drainage district, where it is not charged that the decree of incorporation was procured by fraud, the only test to be applied in determining its validity is whether the court rendering it acquired the requisite statutory jurisdiction and thereafter at every step proceeded within that jurisdiction, and this must be tried solely on the record of the proceedings in which the decree was rendered.

2. ————: ————: **Amended Articles: Signature by Attorneys.** In a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232), where the original articles of association and the statutory notice, immediately given by the clerk in whose office they were filed, are sufficient, the fact that amended articles of association filed in such proceeding are signed by the petitioners by their authorized attorneys of record does not invalidate the decree of incorporation based thereon.

3. ————: ————: ————: **Motion to Strike: Record of Order.** In a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, page 232), where amended articles of association were filed and certain petitioners who had signed the original articles moved to strike out the amended articles on the ground that their names had been signed thereto without their consent and certain objectors also filed demurrers, and the court sustained the motion and the demurrers by a blanket order, and later at the same term made an order from which as a whole it clearly appeared that the court set aside the order sustaining the motion to strike out, although it referred to it as a demurrer. *Held*, that the objection that the order sustaining the motion to strike out had never been set aside and that there were therefore no articles on file on which to base a decree of incorporation was untenable.

4. ————: ————: ————: **Setting Aside Order Striking Out.** Where the court had entered an order striking out the amended articles

of association filed in a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232) it did not exceed its jurisdiction when, at the same term of court, it set aside such order on motion of the petitioners, even though such motion was filed more than four days after the order striking out such articles was made.

5. ———: ———:. ———: **Dismissal: New Articles.** It was not necessary that new articles of association should be filed in a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232) where, after the filing of amended articles, the court permitted the petitioners to dismiss as to certain other petitioners and their lands and as to lands of a number of objectors and to change the boundary lines accordingly, no new lands being brought in and the rights of persons not before the court not being affected, such procedure being tantamount to amendment by interlineation and the statute (Sec. 4380, R. S. 1919) providing that "the articles of association may be amended as any other pleading."

6. ———: ———: ———: **Dismissal As to All or Part of Owner's Lands.** Where the record of a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232), properly construed, shows that the dismissals were as to lands and not as to individuals, the dismissal as to all the lands of a given individual was tantamount to a dismissal as to him and when the dismissal was as to only part of the lands of any one owner, other lands being retained, such owner remained a party to the proceeding and the decree of incorporation was valid.

7. ———: ———: ———: **Retaining Dismissed Lands Within Boundaries.** Where the record in a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232) showed that several small parcels of land, as to which there had been a previous dismissal, were included within the boundaries of the lands incorporated into the district, the decree of incorporation as to such lands was a nullity, but it was not for that reason void in its entirety, inasmuch as it was subject to correction by amendment.

8. ———: ———: ———: **Lands Erroneously Included.** Where the court has acquired jurisdiction in a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, p. 232), the court is not bound to incorporate all the lands described in the articles of association, but may eliminate therefrom such as, upon the hearing, are found not swamp, wet or overflowed or subject to overflow, or such as on account of their character or location would not be benefited by any plan of reclamation whatever. And

if after such elimination there remains a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow, that can, within the purview of the statute, be formed into a drainage district, the court has power to permit the articles to be so amended as to include only the latter body of lands and then render its decree of incorporation in accordance therewith; and if in so doing, the boundary lines are so described as erroneously to include lands not incorporated into the district, the decree is not therefore void, but is subject to correction in that respect by amendment under Section 4416, Revised Statutes 1919 (Laws 1913, page 254).

9. ———: ———: ———: Intent of Dismissal. Where the court permitted the petitioners in a proceeding to incorporate a drainage district under the Act of 1913 (Laws 1913, page 232) to dismiss as to certain lands included in the original articles of association, their purpose in making such dismissal was immaterial, even though it were to give them a majority of the acreage in the remainder, intending at the time to seek an amendment of the decree of incorporation as soon as it was obtained so that it would include these same lands as to which they dismissed, as the only question before the court was whether they were entitled, under the statute, to have incorporated into a drainage district the lands that they were then seeking to have so incorporated; particularly in view of the fact that this information in *quo warranto* does not charge fraud in the procurement of the original decree of incorporation and the subsequent decree extending the boundaries of the district is not challenged.

10. ———: ———: ———: Isolated Tracts Not Incorporated. A decree of court incorporating a drainage district under the Act of 1913 (Laws 1913, p. 232) was not so unreasonable as to be void because the lands incorporated into the district completely surrounded a number of parcels of land not so incorporated, where the lands composing the district were "a contiguous body of swamp, wet or overflowed land," even though such omitted lands were afterwards brought into the district by an amendatory decree; inasmuch as it may not have appeared necessary or advisable to so incorporate them until after the coming in of the chief engineer's report, which under Section 9 of the Act of 1913 was required to show what adjacent lands would be "improved or reclaimed in part or in whole" by the system of drainage adopted.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill,* Judge.

REVERSED.

*B. F. Jones* and *T. L. Montgomery* for appellant.

(1) The circuit court is a court of general jurisdiction and proceeds according to the course of the common law and nothing shall be intended to be out of its jurisdiction but that which specially appears to be so. Adams v. Cowles, 95 Mo. 501; In re Birmingham Drainage District, 274 Mo. 153. (a) This court is given jurisdiction in drainage cases. The law provides that these cases for organizing and enlarging drainage districts shall be heard by the court in a summary manner without unnecessary delay, and the drainage acts are remedial in character and purpose and shall be liberally construed. Laws 1913, pp. 232 to 267, secs. 1 to 63; R. S. 1919, secs. 4378, 4380, 4416, 4438; State ex rel. v. Bates, 235 Mo. 293; State ex rel. v. Bugg, 244 Mo. 554. (b) The circuit court obtained jurisdiction of this case when the petition was filed in the office of the clerk, for the incorporating of the district by a majority of the owners of land within the district, and if after being so filed, as in this case, they so amended by excluding some of the lands that the majority of the number of acres left in the district lie in another county the court does not lose jurisdiction. The jurisdiction once attached is retained to organize the district. In re Big Lake Drain. Dist., 265 Mo. 460. (2) In order to correct certain descriptions in the real estate, and for no other purpose, on August 12th the petitioners filed an amended petition and articles of association by leave of the court. (a) No valid objections were made as to the right of petitioners' attorneys to represent objecting petitioners until the amended petition and articles of association were filed. The court therefore had jurisdiction of the parties and the subject-matter and the amendment was regular and properly made and the substantial rights of no one was affected thereby. The attorneys for the petitioners had a right to sign the names

of petitioners. Laws 1913, p. 235, sec. 4; Inhabitants of New Marlborough v. County Comm., 9 Metc. (Mass.) 423; Dartsmouth v. County Comm., 153 Mass. 12; Young v. Laconia, 59 N. H. 534; Sec. 1822, R. S. 1909. (b) The petition as presented contained the requisite number of signers and the court had jurisdiction of the parties and subject-matter. Sims v. Rosholt, 112 N. W. 50; Serbert v. Lovell, 65 N. E. 197. (c) One signing the petition cannot be an objector. A petitioner cannot be released without the written consent of the majority in acreage of the owners who signed said articles. Laws 1913, sec. 4, p. 235; State ex rel. v. Young, 255 Mo. 627. (d) The attorneys had a right to the exclusive control of the case. 3 Am. & Eng. Ency. Law (2 Ed.), p. 357, par. 5. (3) The motion filed by petitioners to set aside the order sustaining the demurrers was made and passed upon at the same term of court and the court acted within its discretion, in setting aside the order at the same term the order was made, and permitting petitioners to dismiss the proceedings as to certain objecting parties. (a) The power of the court over its judgments rendered during the term is one of its common-law powers of which it can only be deprived by statutory enactment. Aull v. Trust Co., 149 Mo. 1. (b) Such judgments may be set aside for cause though the motion for a new trial has not been filed within the statutory time. Anderson v. Perkins, 52 Mo. App. 527; Currey v. Lead & S. Co., 157 Mo. App. 423. (4) Leave of court was granted to dismiss as to certain objectors and their lands and to reform the boundary lines with reference thereto, and the decree incorporating the district conformed. The territory is contiguous within the meaning of the act. The drainage act does not contemplate as a jurisdictional question that all the land within the boundary lines of the district should be included within the district. Practice has shown the impracticability of this. Sec. 40, Laws 1913, p. 254.

*John A. Whiteside* and *Ben F. Glahn* for respondent.

(1) The decree of incorporation was void. (a) It was contrary to the spirit of the drainage law, and a palpable abuse of the discretion of the trial court to permit petitioners to dismiss as to forty-six ownerships and as to 3713.45 acres, to enable the petitioners to have a majority in acres. Ellsberry Drain. Dist. v. Harris, 267 Mo. 139; State ex inf. v. Colbert, 273 Mo. 198; North Kansas City Levee Dist. v. Securities Co., 268 Mo. 654; State ex rel. v. Campbell, 120 Mo. 402. (b) Having dismissed as to some of the landowners, and stricken their names from the proceedings, they were out of the court for every purpose of the case. And the inclusion of their lands in the district renders the entire decree void. North Kansas City Levee Dist. v. Securities Co., 268 Mo. 654; State ex rel. v. Small, 131 Mo. App. 470; State ex rel. v. Colbert, 273 Mo. 198; State ex rel. v. Timber Co., 178 S. W. 93. (c) The court having stricken the amended petition from the files, and not having set that portion of the order aside, left no articles of association before the court to be acted on at the time the dismissals were made and the decree rendered. R. S. 1919, sec. 4378; Fabius River Drainage Dist. v. Scott, 240 Mo. 31. (d) The amended articles of association were fatally defective in that they were signed by the attorneys, and not by the landowners. Laws 1913, p. 232, sec. 2; R. S. 1919, sec. 4378; Fabius River Drain. Dist. v. Scott, 240 Mo. 31. (2) The decree is contradictory in that: (a) It shows parties to be both petitioners and objectors. (b) It shows lands dismissed and also the same lands retained. (c) It shows certain individuals both as being dismissed and retained. (d) It sets out a definite boundary line without excepting any of the lands therein; and then sets out a schedule of the lands incorporated which shows that the incorporated lands do not include all the lands within the boundary. (3) The motion to set aside the order sustaining the demurrer being filed out of time, could not be entertained except as a suggestion of error,

which the court might in its sound discretion remedy during the term. R. S. 1919, sec. 1456; Scott v. Joffee, 125 Mo. App. 573. The motion to set aside contained ten grounds. The court assigned a ground or reason not assigned in the motion. This necessarily overruled said motion on all the ten grounds assigned. Collison v. Eads, 211 S. W. 715; James v. Butcher, 215 S. W. 767; Miller v. Car Co., 130 Mo. 517; Thieler v. Ry. Co., 140 Mo. 335. To set aside the order sustaining the demurrer "for the purpose of permitting the petitioners to dismiss this proceeding as to" certain parties, was an abuse of the discretion of the trial court, for the reason that it was not to correct an error of the court as might be done under Sec. 1290, R. S. 1919, but was done to permit petitioners to further act, and save themselves from going out of court. (4) No written consent is shown for the dismissal as to the eleven landowners who had signed the articles of association; such consent is required. R. S. 1919, sec. 4380; Laws 1913, p. 232, sec. 4. (5) The dismissing as to 3713 acres of land, admitted to be wet, swamp and overflowed lands located within the boundary lines of the district and completely surrounded by lands included in the district in small isolated tracts, some of them as small as five acres, renders the decree invalid for unreasonableness. Kelly v. Meeks, 87 Mo. 401; Copeland v. St. Joseph, 126 Mo. 431. (6) The dismissal as to 3713 acres, followed by the speedy filing of an application to amend the boundaries and take these same lands back into the district, shows that the dismissals were made either (a) to give petitioners a majority of the acreage, as signed the articles; or (b) to enable petitioners to control the official organization of the district without permitting these 3713 acres to have a voice in the election of the officer of the district, both of which are contrary to the spirit and purpose of the law and should render the decree void as working a fraud both on the court and these landowners. Ellsberry Drain. Dist. v. Harris, 267 Mo. 139. (7) No amended articles of association were filed by petitioners changing the bound-

ary lines of the district after the dismissal as to the large number of landowners and their lands. While petitioners claim that such dismissals acted as a constructive amendment of the articles, yet they did not in all of these orders have leave of court to change the boundary. It was necessary to file amended articles after the dismissals. State ex rel. v. Colbert, 273 Mo. 198.

RAGLAND, C.—This is a proceeding by information in the nature of a *quo warranto.* The information was filed by the Prosecuting Attorney of Clark County, at the relation of certain parties claiming a special interest, against the Mississippi and Fox River Drainage District and the individuals composing its board of supervisors, alleging in substance that they were claiming and exercising the rights, privileges and franchises of an incorporated drainage district without any warrant, charter or grant, and praying that they be required to show by what authority they claimed to have and use such rights, privileges and franchises.

The answer averred that the Mississippi and Fox River Drainage District was duly incorporated October 8, 1915, by a decree of the Clark County Circuit Court and that thereafter the individual defendants had been duly elected as its supervisors. The proceedings in the circuit court culminating in the decree were set out at length. Other matters were pleaded by way of estoppel, but we deem it unnecessary to consider them in view of the conclusions we have reached as to the principal questions involved. Assuming the burden of proof the defendants undertook to show a valid incorporation under the Act of 1913, providing for the organization of drainage districts by circuit courts. Pursuant to this purpose they introduced in evidence the record of the proceedings had in the Circuit Court of Clark County, entitled, "In re the petition for Incorporation of Mississippi and Fox River Drainage District." From this it appears:

On June 16, 1915, articles of association, purporting to have been signed by the owners of a majority of the acreage of a contiguous body of swamp, wet and overflowed lands, and lands subject to overflow, in Clark County, and praying that the same and other property therein described be declared a drainage district under the Act of 1913, were filed with the circuit clerk of said county. Without setting out either the tenor or the substance of the articles, it is sufficient to say that they in all respects conformed to the requirements of Section 2 of the act, now Section 4378, Revised Statutes 1919. The body of land therein described consisted of 11,494 acres of which the signers claimed to own 7,377 acres.

Immediately upon the filing of the articles of association the clerk in whose office they were filed gave due notice thereof by publication as provided by Section 3 of the act (Sec. 4379, R. S. 1919).

. On or before the first day of the next succeeding term of the Circuit Court for Clark County, which began August 2, 1915, numerous owners of lands within the proposed district filed objections. On the convening of the court at that term a number of the signers of the articles of association also appeared and asked leave to withdraw their names therefrom on the ground that they had signed under a misapprehension. It does not appear, however, that a majority of the petitioners consented to a dismissal of the cause as to them, nor that the same was so dismissed by the court.

Pending the hearing, and on August 12, 1915, the petitioners filed amended articles of association. In the amended articles the descriptions of some of the parcels of land in the proposed district were made more definite, and there were two or three changes as to minor ownerships, but there was no substantial departure from the original articles of association. The names of all the signers of the original petition were appended to the amended articles, but they were subscribed thereto by the "attorneys for the petitioners" and the pleading so showed on its face.

C. T. Llewellyn and John Acklie et al., objectors, filed demurrers to the amended articles of association on the ground principally that the articles disclosed on their face that they had not been signed by the landowners personally, and W. T. Tucker and thirteen others of the original petitioners moved to strike the amended articles from the files because their names had been signed thereto by counsel without any authority so to do. With reference to the action of the court on the two demurrers the record is contradictory. An entry as of date August 19, 1915, recites that "the court sustained said motion to strike filed by W. J. Tucker et al. and the said demurrer filed by C. T. Llewellyn and John Acklie et al." The decree of incorporation subsequently entered, however, recites that on the 19th day of August, 1915, the court overruled "all objections and motions and demurrers so filed by each and every and all objectors," but that the court on that date sustained the "demurrer" of W. J. Tucker et al., on the ground that they had not authorized their names to be signed to the amended articles. During the same term of court and on the 28th day of September, 1915, T. L. Montgomery and John M. Dawson as "attorneys for petitioners" filed a motion to set aside "the order sustaining the demurrer filed by objectors herein on the 19th day of August, 1915." The grounds of the motion, however, were addressed solely to the action of the court sustaining the motion of W. J. Tucker et al., a minority of the petitioners, to strike the amended articles of association from the files. A record entry of date, September 29, 1915, recites: "This cause coming on to be heard upon the motion to set aside the order of the court sustaining the demurrer of W. J. Tucker et al., that they be not considered as signers to the amended petition and articles of association, and the court having seen and heard said motion . . . doth sustain same, and the order sustaining said demurrer on the 19th day of August, 1915, is vacated and set aside and for naught held." The recitals of the decree of incorporation with respect to the same matter

are as follows: ''The following named petitioners and subscribing landowners filed a motion and a demurrer to said amended petition requesting that their names be stricken from said amended petition for the reason that they did not authorize same to be signed to said amended petition. The said parties are as follows, to-wit: W. J. Tucker, Frank Shaw, A. L. and R. M. Vandevert, J. F. Fox, J. W. Hoewing, Frank Hoewing, Harry Hoewing, Albert Koeber, Otto Koeber, and the court sustained said demurrer on said 19th day of August, 1915, and afterwards on the 29th day of September, at the same term of court, upon motion of the petitioners, set the same aside for the purpose of permitting the petitioners to dismiss this proceeding as to the above named parties.''

After the order of August 19, 1915, had been set aside, the petitioners, that is, a majority of the original subscribers to the articles of association, with leave of court, dismissed the proceeding as to the seceding petitioners named in the preceding paragraph and as to their lands. At the same time with further leave they dismissed as to certain parcels of the lands of a number of the objectors, and changed the boundary lines of the proposed district to conform as far as possible to the situation as it existed after the several dismissals. No further amended articles of association were filed thereafter, but the decree of incorporation sets out the articles as amended by the dismissals and the conforming changes in the boundary lines.

The proceeding was dismissed as to some 3700 acres of land. Approximately two-thirds of this lay outside of the boundaries of the district as finally established, but the remainder, consisting of four or five isolated tracts, was within the boundaries and completely surrounded by lands that were incorporated as the district. Two or three small parcels of land as to which the proceeding was dismissed were, by mistake evidently, incorporated by the decree as a part of the district.

In the decree incorporating into a drainage district the remainder of the lands after the dismissals just

noted the court embodied a finding of all necessary jurisdictional facts.

At the next term of the court after the decree of incorporation was entered, the drainage district by its board of supervisors filed a petition to amend the decree so as to include within the district the lands that had been dismissed from the original proceeding and other lands. After numerous objections were filed, heard and overruled, the decree was amended, substantially as prayed.

Defendants in the instant case next introduced evidence tending to show that the individual defendants had been duly elected supervisors of their co-defendant, Mississippi and Fox River Drainage District and that they possessed all the statutory qualifications therefor. Plaintiff offered no evidence.

The court held that the decree incorporating the Mississippi and Fox River Drainage District was void and rendered judgment of ouster against the individual defendants forbidding them from performing any further acts as supervisors of the Mississippi and Fox River Drainage District, "because same does not exist as a corporation." After the rendition of this judgment and pending defendants' motion for a new trial, the court on motion of plaintiff amended "the record, pleadings, processes, entries, returns and judgment" by striking out the name of the defendant, Mississippi and Fox River Drainage District. The motion for a new trial was overruled and the cause is here on the appeal of the individual defendants.

The trial court held that the original decree purporting to incorporate the Mississippi and Fox River Drainage District was void. The correctness of that ruling is the only matter presented for review.

The State in this proceeding does not charge that the decree in question was procured through fraud, hence the only test to be applied in determining its validity is that of jurisdiction. [State v. Woods, 233 Mo. 357; State v. Fleming, 158 Mo. 551.] Did the court rendering

it acquire the requisite statutory jurisdiction and did it thereafter at every step proceed within that jurisdiction? That question was tried by the court below solely on the record of the proceedings in which the decree was rendered—and properly so.

I. No question is raised with respect to the sufficiency either of the original articles of association, or of the statutory notice immediately given by the clerk in whose office they were filed. It is the contention of respondent (plaintiff), however, that the amended articles of association on which the decree of incorporation was based did not conform to statutory requirements in that they were not signed by the landowners themselves. The statute does not provide that the petitioning landowners shall by their own hands respectively affix their names to the articles of association. Its language in this respect is this: "The owners of a majority of the acreage . . . may make and sign articles of association." The owners in the proceeding under review did sign the amended articles by their counsel of record. *Qui facit per alium facit per se*. A question might be raised as to the authority of counsel in the premises. But it must be evident that even if a previous authorization had not been expressly or impliedly given them to sign the names of their clients to the amended petition, their acts in so doing were ratified and confirmed by acquiescence and adoption on the part of all their principals except those as to whom the proceeding was subsequently dismissed.

II. Respondent next makes the point that the order sustaining the motion to strike the amended articles from the files, made August 19, 1915, was never set aside, consequently there were no articles of association on file in the cause on which to base a decree of incorporation at the time the decree in question was rendered. At the time the motion to strike was pending there were also pending two demurrers. As already pointed out the record is contra-

*Margin notes: Drainage District: Amended Articles: Signature by Attorneys. / Record Construed.*

dictory as to the disposition made of the demurrers. If they were sustained, however, it was by a blanket order made August 19, 1915, in which the motion to strike was also sustained. One of the demurrers was filed by C. T. Llewellyn, an objector, and the other was filed by John Acklie and others who were also objectors. The motion to strike was filed by W. J. Tucker and eleven or twelve others, all of whom were signers of the original articles of incorporation. The principal ground of their motion was that their names had been signed to the amended articles of association without their consent. The contention of respondent that the order sustaining this motion was never set aside seems to be based on the record entry of September 29, 1915, which recites that "the order sustaining said *demurrer* on the 19th day of August, 1915, is vacated and set aside," but which does not *eo nomine* mention the order sustaining the motion to strike. There are other recitals in the entry, however, which describe the order set aside as "the order of court sustaining the demurrer of W. J. Tucker et al. that they be not considered as signers to the amended articles of association." Now W. J. Tucker et al. never filed a demurrer; they did file a motion to strike; and on the ground that they did not sign the amended articles. From the entry as a whole, therefore, it is entirely clear that the order set aside was the one made at the instance of W. J. Tucker et al., striking the amended articles from the files, notwithstanding it was called an order sustaining a demurrer. It is equally clear that the court and all the parties to the proceeding understood at the time, that the order of September 29th set aside the previous order striking the amended articles from the files, because all of their subsequent acts were based on such assumption.

III. Respondent next claims that the court exceeded its authority in setting aside the order striking the amended articles of association from the files, and on these grounds: first, the motion of petitioners asking

that the order be set aside was a motion for **Setting Aside Order: Same Term.** a new trial and it was not filed within four days; and, second, the order was set aside "for the purpose of permitting the petitioners to dismiss this proceeding as to" certain other petitioners, a ground not set up in the motion. With respect to these contentions it is sufficient to say that during the term the court had the inherent power, and of its own motion if it so elected, to modify, alter or vacate any order made at that term. [Aull v. Trust Co., 149 Mo. 1.] Whether it abused its discretion in so doing is not pertinent here. The question is not whether the court committed error, but whether it exceeded its jurisdiction. [State v. Fleming, supra, l. c. 563.] In this particular it clearly did not.

IV. After the amended articles of association were reinstated the court permitted the petitioners to dismiss as to certain other petitioners and their lands and as to certain parcels of the lands of a number of objectors and to change the boundary lines accordingly. Respondent contends that it was necessary to file **Amendment: New Articles.** new articles of association to conform to these further amendments. The amendments, however, did not bring into the proposed district any new lands, and, consequently, did not affect, nor seek to affect, the rights of any persons not in court. They were made by constructively striking out certain names and certain lands and changing the boundaries to conform, and by then setting out in the record (the decree of incorporation) the articles as so amended—the method thus followed being tantamount to amendment by interlienation. The statute (Sec. 4380, R. S. 1919) provides that "the articles of association may be amended as any other pleading." It was therefore clearly within the discretion of the court whether it would permit the amendments to be made in the manner they were, or whether it would require the filing of a new pleading.

V. It is the further contention of respondent that the entire decree of incorporation is void because, as it asserts, there were included within the district as incorporated lands belonging to owners as to whom there had been a dismissal and whose names has been stricken from the proceeding. The record properly construed shows that the dismissals were as to lands and not as to individuals. Where the proceeding was dismissed as to all the lands of a given individual that was tantamount to a dismissal as to him, but where the dismissal was as to only a part of the lands of any one owner, others being retained, such owner necessarily remained a party to the proceeding. As already pointed out, some two or three small parcels of land as to which there had been a previous dismissal were included in the lands incorporated into the district. As to these the decree is of course a nullity, but it by no means follows that for that reason the decree is void in its entirety. On the contrary it is subject to correction by amendment.

VI. Respondent insists that the decree of incorporation is void for the further reason that it describes definite boundary lines and then sets out a schedule of the lands incorporated which shows that the lands incorporated do not include all the lands within the boundaries. There is no question but that both the original articles of association and the amended articles subsequently filed set out the boundary lines of the proposed drainage district and stated the names of all the owners of lands or other property in said district, together with a description of the lands or other property owned by each. The articles in fact complied with all statutory requirements and in connection with the publication of the statutory notice fully invested the court with jurisdiction to incorporate the proposed district. Was the court then bound to incorporate *all* the lands described in the articles, or else none of them? Such a construction of the statute would be un-

*Exclusion of Lands.*

reasonable. On a hearing the court might in many cases find that some of the lands were not swamp, wet or overflowed, or subject to overflow, or that on account of their character or location they would not be benefited by any plan of reclamation whatever and for that reason ought not to be burdened with any part even of the preliminary cost of organization. Clearly in such cases, if after the elimination of these lands there remains a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow, that can within the purview of the statute be formed into a drainage district, the court has the power to permit the articles of association to be so amended as to include only the latter body of lands and then render its decree of incorporation in accordance therewith. If in such decree the boundary lines are so described as to erroneously include within their confines lands not incorporated into the district, the decree is not for that reason void, because under the express provisions of the statute it is subject to correction in that respect by amendment. [Sec 4416, R. S. 1919; Laws 1913, p. 254.]

VII. It is claimed by respondent that there was no finding by the court in the drainage proceeding that the lands dismissed therefrom were not subject under the statute to be incorporated into a drainage district, but that on the contrary the petitioners voluntarily dismissed as to those lands in order to give them **Purpose of Dismissal.** a majority of the acreage in the remainder, intending at the time to seek an amendment of the decree of incorporation as soon as it was obtained so that it would include the very same lands as to which they were then dismissing. That such was the purpose and intention of the petitioners was not, however, shown by the evidence, either directly or inferentially. At most it is but a surmise on the part of respondent. But conceding it to be true that the petitioners reduced the acreage of the district as originally proposed solely for the purpose of giving them a majority of the acreage

and thereby enabling them to incorporate, the incorpor-
poration of all the lands described in the original ar-
ticles of association was not a jurisdictional requirement
as we have endeavored to point out in the preceding
paragraph.  And what the petitioners purposed to do in
the future was immaterial.  The only question before
the court was whether they were entitled under the stat-
ute to have incorporated into a drainage district the
identical body of lands that they were then seeking to
have so incorporated.  In this connection it should be
borne in mind that the information in this case makes
no charge of fraud in the procurement of the original
decree of incorporation, and the subsequent decree ex-
tending the boundaries of the district is not challenged.

VIII.  It is finally insisted that, because the lands
incorporated into the district completely surrounded a
number of parcels of land not so incorporated, the orig-
inal decree of incorporation was void for unreasonable-
ness.  It is not apparent how that one fact, and respond-
ent suggests no other, made the decree so unreasonable
as to be invalid.  It might be suggested that
Unincorporated the compelling of unwilling landowners—
Lands.
objectors—to contribute to the cost of the
construction and maintenance of a system of drainage
which would benefit as much as their own, by reclama-
tion, lands entirely surrounded by their own, without
requiring the owners of such isolated lands to make like
contributions, would be unreasonable.  But no such situa-
tion as that is shown.  Respondent has appended to its
brief a map which purports to show the contour and area
of the body of lands comprising the original district and
the relative areas and locations of those not forming a
part of it but enclosed within it.  Neither the map nor
other evidence in the case, however, discloses either
the topography or other physical characteristics of the
isolated tracts, or the relation they sustain to the lands
forming the district from the standpoint of drainage,
other than that of mere proximity.  It is true that these

lands were afterward brought into the district by the amendatory decree, but it may not have appeared that it was necessary or advisable to so incorporate them until after the coming in of the chief engineer's report, which under Section 9 of the Act of 1913 was required to show what adjacent lands would be "improved or reclaimed in part or in whole" by the system of drainage adopted. The lands composing the district were "a contiguous body of land" and we cannot say that simply because this body of land surrounded other land which did not form a part of the district, the original decree of incorporation was so unreasonable as to be void.

A critical examination of the record of the drainage proceedings under review discloses many irregularities, but none of them are of a jurisdictional character. It follows that the judgment of the trial court should be reversed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAGLAND, C., is hereby adopted as the opinion of the court. All of the judges concur.