THE STATE EX INF. NORTH TODD GENTRY, Attorney-General, v.
L. R. TOLIVER.

Court en Banc, October 8, 1926.

1. **JUSTICE OF PEACE: Appointment: Power of County Court.** Upon an ascertainment of the existence of the statutory conditions upon which the county court may appoint an additional justice of the peace for a municipal township, the court has power to make the appointment, and a discretion to refuse to make it.

2. ———: ———: **Judicial Act: Determination of Facts: Quo Warranto.** The determination of the sufficiency of the petition for the appointment of an additional justice of the peace for a municipal township, the truth of the facts in the petition stated, the necessity for an additional justice, and whether two additional justices have already been appointed, whether if appointed they were qualified and whether they are acting justices, involves questions of fact, and the county court in reaching its conclusion that an additional justice of the peace, under the authorization of the statute (Sec. 2689, R. S. 1919), could and should be appointed, acts judicially, and its order, being necessarily based upon a finding of facts, is a judgment; and a superior court cannot, by its writ of **quo warranto,** go behind such judgment and investigate the facts upon which such judgment is based, and therefore the justice of the peace, so appointed, cannot be ousted upon the theory that two additional justices of the peace had been appointed before said order of the county court was made where the order recites a finding that two additional justices had not already been appointed.

3. **JURISDICTION: Discretion: Dependent upon Finding of Facts.** Where a power is by statute vested in the county court and the exercise of the power rests upon a finding of facts, and the court finds the existence of the facts and proceeds to act, its orders made in pursuance thereof, whether strictly judicial or otherwise, are invulnerable to collateral attack, and in a collateral attack are conclusive if within the jurisdiction conferred.

4. **JUDGMENT: Collateral Attack: Quo Warranto.** The judgment of an inferior court, if within its jurisdiction, cannot be attacked collaterally; and a suit by **quo warranto** to oust a justice of the peace appointed by the county court is a collateral attack upon the judgment appointing him. Such a judgment can be annulled only by a direct attack for fraud. [Criticising State ex rel. v. Fleming, 147 Mo. 1.]

5. **COUNTY COURT: Ministerial Acts: Discretion.** Where the statute says that the county court "shall have power" to appoint an additional justice of the peace for a municipal township when certain prescribed conditions exist, and the court, having found those conditions to exist, proceeds to exercise the power, it does not act ministerially, but exercises a discretion,

315 Mo.—47.

and its order therein, in the absence of fraud, cannot be reviewed by **quo warranto,** or overthrown by evidence showing that its findings of fact are not true.

Corpus Juris-Cyc. References: **Counties,** 15 C. J., Section 124, p. 471, n. 18; Section 143, p. 487, n. 10 New; **Justices of the Peace,** 35 C. J., Section 10, p. 458, n. 23; **Officers,** 29 Cyc., p. 1433, n. 21, 23; **Quo Warranto,** 32 Cyc., p. 1463, n. 8.

*Quo. Warranto.*

DISMISSED.

*North T. Gentry,* Attorney-General, and *Leslie J. Lyons* and *Henry M. Griffith* for relator.

(1) An information in the nature of *quo warranto* challenging the legality of respondent's title to office is a direct proceeding and not a collateral attack upon the judgment and order of the county court appointing respondent. A proceeding in the nature of *quo warranto* is in its very essence, a direct proceeding. State ex rel. v. Fleming, 147 Mo. 1; State ex rel. v. Weatherby, 45 Mo. 20; State ex rel. v. Dougan, 305 Mo. 383; State ex rel. v. Hamilton, 240 S. W. 448. In this State where there is no statutory provision for appeal or review, *quo warranto* is the exclusive remedy to try title to office. Equity does not have jurisdiction. The State is the only party involved. No one is claiming the particular office claimed by respondent. The State, in its sovereign capacity, has an interest in ascertaining that all of its officers, particularly those connected with the judiciary, have valid title to their offices to the end that their judgments and decrees may be valid, binding, and respected by the citizens. (2) The county court in making appointments of county employees, officers and agents, acts ministerially and not judicially. The order of the county court appointing respondent as an additional justice of the peace, is not a judgment. The order is not of the kind and character to be dignified as a judgment of the court. The county court acted ministerially and not judicially. (3) An order made in the discharge of a ministerial duty may be rescinded, cancelled, annulled, or otherwise modified and dealt with at the pleasure of the county court in the absence, of course, of a statutory provision to the contrary. County of Marion v. Phillips, 45 Mo. 75; 15 C. J. 471. The selection and appointment of the officers of the government is not a judicial function. Courts are not created for that purpose. Primarily, courts determine controversies between litigants upon issues framed according to said fixed rules and principles. The selection and appointment of officers does not bring into play that function. State ex rel. Truager v. Nash, 66 Ohio St. 612; Ry. Co. v. St. Louis, 92 Mo. 160. (4) The appoint-

ment of Cairns and Pollock exhausted the power and authority given the county court to appoint additional justices of the peace. Sec. 2689, R. S. 1919. (5) The failure of Cairns and Pollock to file bond as required by Section 2927, did not nullify their appointments.

*J. Francis O'Sullivan, Maurice J. O'Sullivan, George Charno* and *Warren A. Drummond* for respondent.

(1) The county court is given jurisdiction to determine the necessity for the appointment of, and to appoint additional justices of the peace. Sec. 2689, R. S. 1919. Jurisdiction of the subject-matter is the power to determine matters of the general class to which the proceedings in question belong. State v. Smith, 104 Mo. 419; Hope v. Blair, 105 Mo. 85; State v. Neville, 110 Mo. 345; Musick v. Railroad, 114 Mo. 309; Leonard v. Sparks, 117 Mo. 103; Burke v. Kansas City, 118 Mo. 309; Ekerle v. Wood, 95 Mo. App. 378. (2) The determination of the county court under the statute as to the necessity for, and jurisdiction to appoint additional justices of the peace, is a judicial question, and as such is not subject to collateral attack. State ex rel. v. Simmons, 35 Mo. App. 381; State ex rel. v. Powles, 136 Mo. 376; State v. Schenckel, 129 Mo. App. 224; State ex rel. v. Weatherby, 45 Mo. 20; 15 C. J. 471, sec. 124; 34 C. J. 875, sec. 1286; and page 878, sec. 1287; and page 874, sec. 1284; State ex rel. v. Fleming, 158 Mo. 558; State ex rel. v. Beurman, 186 Mo. App. 691; State ex rel. v. Drain. Dist., 290 Mo. 33; State ex inf. v. Dougan, 305 Mo. 383; State ex inf. v. Drain. Dist., 292 Mo. 696. (3) This attack on the order appointing respondent a justice of the peace is a collateral attack. Lieber v. Lieber, 239 Mo. 1. (4) The law presumes the validity and not the invalidity of the order of the county court appointing respondent. 15 C. J. 466, sec. 118, and page 468, sec. 122; State ex rel. v. Wilson, 216 Mo. 215; Petet v. McClanahan, 297 Mo. 677; Lingo v. Burford, 112 Mo. 149; 34 C. J. 923, sec. 1331; State v. Fulton, 152 Mo. App. 345; Viehman v. Viehman, 298 Mo. 356. (5) The power of the county court to decide includes the power to decide erroneously. State v. Wear, 145 Mo. 162; Schubach v. McDonald, 179 Mo. 163. (6) The place where respondent holds his court is immaterial so long as it is in the township. Secs. 2689, 2946, R. S. 1919. (7) The county court made no error in appointing respondent a justice of the peace. The other alleged appointees never qualified for their offices because they failed to file the bond required of them. Sec. 2927, R. S. 1919.

BLAIR, C. J.—This is an original proceeding by *quo war anto* to test the right of respondent to hold the office of justice of the peace of Kaw Township, in Jackson County. Our preliminary writ was

ordered to be issued, but respondent waived its formal issuance, entered his appearance and filed his return to the petition as and for the writ. Relator filed his answer to such return and respondent moved for judgment upon the pleadings.

The information charges that respondent, without legal authority or right and since December 29, 1924, usurped, illegally held, used, intruded upon and exercised the office of justice of the peace of Kaw Township in Jackson County, and continues to do so and illegally claims, enjoys and receives rights, fees and emoluments appertaining to said office. The prayer of the petition is for an order upon respondent to show by what authority he does the things alleged, and for relief relator prays that it be adjudged that no such office as claimed by respondent in, fact exists.

It will not be necessary to set out the contents of respondent's return. Relator's reply, in substance, admits that the purported records set forth in respondent's answer, upon their face, are sufficient to authorize respondent to hold said office. It stands admitted that respondent possesses all of the statutory qualifications to hold the office. It will only be necessary to detail facts which have a direct bearing upon the legal questions involved.

Section 2689, Revised Statutes 1919, provides that, whenever a petition shall be presented to the county court, signed by twelve or more qualified voters of any township, setting forth that they live more than five miles from the nearest justice of the peace in their township, the county court shall have power to appoint an additional justice of the peace for such township and the justice of the peace so appointed shall live in the immediate neighborhood of the petitioners and at least five miles from any other justice of the peace of such township. Not more than two such additional justices of the peace shall be appointed for any township. Respondent was appointed as an additional justice of the peace under said section, and it is the validity of such appointment which is to be determined in this proceeding.

It appears from the allegations of the reply that the county court had previously made orders appointing two additional justices of the peace under the authority of said Section 2689. It is contended that the record proof in support of such allegation demonstrates that said county court had no power to make the appointment of respondent at the time the purported order appointing him was made. On the other hand, it is the contention of respondent that the county court acted judicially in determining the facts upon which its right and power to appoint respondent depended, including its necessary finding that two additional justices of the peace had not already been appointed, had qualified and were acting as such, and that its finding thereon constituted a judgment which cannot be attacked collaterally

and that this proceeding is a collateral attack upon such judgment, and therefore that this court cannot inquire into the facts in respect to such alleged prior appointments of additional justices of the peace.

The first question logically presented is whether the county court acted judicially in determining the facts necessary to give it power or jurisdiction to make the appointment. The county court cannot make the appointment unless the statutory petition is first filed; but it is manifest that it is not required to make an appointment merely because the statutory petition has been presented to it. Such petition merely gives the county court the *power* to make the appointment, if it finds it has not already exhausted its power in that respect and it concludes to exercise such power. The county court certainly is not bound by the statement in such petition that the signers live more than five miles from the nearest justice of the peace, and said court may ascertain the truth of such statement for itself. The fact that the county court has the power to make the appointment necessarily implies the power to refuse to make it, even if all of the jurisdictional facts are clearly shown to exist. For example, the county court might conclude that there was no existing necessity for such appointment, notwithstanding the fact that there was no justice of the peace within more than five miles of the place of residence of the twelve or more petitioners and two additional justices of the peace had not already been appointed for said township.

The determination of the sufficiency of the petition, the truth of the facts therein stated and the business necessity for such appointment and whether two additional justices of the peace had already been appointed, were legally qualified and were acting in that capacity at the time, were questions to be determined by the county court in reaching its conclusion that an additional justice of the peace, under the authority of said section, could be and should be appointed. We, therefore, think that the county court acted judicially in determining that it had jurisdiction to make the appointment.

Respondent cites the case of State ex rel. Rice v. Simmons, 35 Mo. App. 374. We think that case strongly supports his contention. It was a proceeding by *quo warranto* to test the right of one Simmons to hold the office of justice of the peace in Sarcoxie Township, in Jasper County. Laws of 1881, page 154, after providing for the election of two justices of the peace in each township and for an additional justice of the peace in towns or cities of two thousand or more inhabitants, provided that ''in towns of one hundred inhabitants or more which may contain any medical spring or springs, the water of which may be used for its curative or supposed curative effects, or which may be situated within five hundred yards of any such spring, shall be entitled to a justice of the peace, in addition to the number which may be allowed by law to the township in which said

town may be situated, who shall be commissioned by the county court," etc., and provided for his appointment by the county court.

The Circuit Court of Jasper County ousted Simmons from said office and, upon appeal to the Kansas City Court of Appeals, such judgment was reversed. In passing upon the effect of the finding by the circuit court that the facts did not authorize the county court to appoint Simmons, Judge ELLISON said:

"We are furthermore of the opinion that the circuit court should not have entered upon an inquiry as to whether there was a medical spring within five hundred yards of the town of Sarcoxie. The statute has designated the county court as the tribunal in which such matter is to be determined; its action in that respect is judicial and cannot be disturbed, where its record discloses that it has determined, in a legal manner, the matters committed to its jurisdiction. The effect of the action of the circuit court below is, that it has heard the testimony and tried, *de novo,* the matters determined by the county court, and which the latter court, under the statute, alone has power to determine; such determination, too, being final. [State ex rel. v. Goodwin, 5 S. W. (Texas) 678; State ex rel. v. Weatherby, 45 Mo. 17; State ex rel. v. Lingo, 26 Mo. 496; Scott v. Crews, 72 Mo. 201.]"

In State ex rel. Read v. Weatherby, 45 Mo. 17, cited by Judge ELLISON in the Simmons case, the proceeding was by *quo warranto* against the trustees of the town of Shelbina. Relator there contended that the order of the county court incorporating said town was procured by fraud. There is no such allegation in the case at bar. Judge CURRIER said:

"It was not necessary, in alleging the existence of the corporation, to set out the facts preliminary to the grant of the order, and upon which the order was founded. [12 Barb. 573.] The order, and not the antecedent facts, brought the corporation into being. The presence of these facts is to be presumed from the fact of the order until the order itself is attacked and overthrown. The court had jurisdiction of the subject, and the propriety and regularity of its action is to be presumed until the contrary appears. Its finding and judgment in the premises, until set aside, must be deemed conclusive of the main fact here sought to be drawn in issue. This principle is applicable to the acts and judgments of all courts of record having jurisdiction of the subject-matter of such acts or judgment."

In State ex rel. Brison v. Lingo, 26 Mo. 496, also cited by Judge ELLISON in the Simmons case, the mayor of the city of St. Louis had suspended Lingo from the office of superintendent of the workhouse, to which office he had been elected by the people. His term had not expired. The mayor appointed Brison in the place of Lingo and Lingo refused to give up the office. It was held that the circuit court had jurisdiction of the *quo warranto* proceeding, and that the

ordinance, conformably to the charter, gave the mayor authority to suspend Lingo, pending the hearing of the charges against him before the city council. In affirming the action of the circuit court in ousting Lingo, Judge RICHARDSON said: "The ordinance made under the authority of the charter regulated the manner of trying a suspended officer on charges preferred by the mayor, and the court had no right to investigate the truth of the charges made by the mayor in this case, or in any wise to usurp the functions of the city council. The court had only to see that the mayor had pursued his authority, and that the charges on their face warranted his order suspending the defendant, and the demurrer therefore was properly sustained to the plea which sought to change the venue of the trial and to put in issue the truth of the charges."

The case of Scott v. Crews, 72 Mo. 261, also cited by Judge ELLISON, was not a proceeding by *quo warranto,* but well illustrates the principle that the orders of inferior courts based upon a finding of facts necessary to the exercise of their jurisdictions constitute judgments. Defendant had been removed by the probate court as administrator, because of his failure to make a settlement, and plaintiff had been appointed as administrator *de bonis non.* Scott brought suit against Crews for the purpose of ascertaining and enforcing the liability of Crews to the estate. Crews urged that the order of the probate court revoking his letters testamentary was a nullity because it was made without proper notice. It was there said: "In case of a delinquent executor or administrator, the above section authorizes the court to order such executor or administrator to make settlement or to revoke his letters, and as the order of the probate court revoking defendant's letters recites all the facts necessary under said motion to give the court jurisdiction both over Crews and the subject-matter, the propriety and regularity of its action is to be presumed. The order of removal recites that 'he failed and still fails and refuses to make final settlement, or to show cause, after having been properly cited to do so, why it cannot be made.' All the facts necessary to confer jurisdiction thus appearing affirmatively on the face of the proceeding, the judgment of removal stands upon the same footing of unquestionable verity as do judgments of courts of general jurisdiction, and the finding and judgment of the court, until set aside, must be deemed conclusive."

In State ex rel. Walker v. Powles, 136 Mo. 376, Powles was ousted from the office of justice of the peace by *quo warranto* proceedings instituted by our Brother WALKER, then Attorney-General, on the ground that his term had expired. In reaching the conclusion that Powles was properly appointed in the first instance, BRACE, C. J., said: "The county court having found as a basis for that appointment that West Plains in Howell Township in said county is a city of more

than two thousand inhabitants, and that respondent is a resident of that city, these facts are established for the purposes of this inquiry (State ex rel. v. Simmons, 35 Mo. App. 374; State ex rel. v. Weatherby, 45 Mo. 17), and are sufficient to show that said township was entitled to the additional justice provided for, in such circumstances, by the statute," etc.

State v. Schenkel, 108 S. W. (Mo. App.) 635, was a criminal prosecution for refusal of defendant to pay toll for the use of a toll road. Schenkel undertook to attack the validity of the toll charge. Judge Goode said: "We find in the record of the proceedings by which the County Court of Pike County took charge of this road and ordered tolls to be collected for its use a recital of all facts essential to the exercise of the court's jurisdiction; and, as said tribunal was vested with authority to determine whether or not the recited facts existed, we consider its finding invulnerable to collateral attack, and perhaps to any form of attack. In our view the County Court of Pike County acted judicially, and not as an administrative board, in determining the facts existed on which it might erect toll gates along the road in question."

The general rule is thus stated in 34 Corpus Juris, p. 874, sec. 1284: "Where power or jurisdiction over a subject is delegated to any public officer or tribunal, whether executive, legislative, judicial, or special, and its exercise is confided to his or their discretion, the decisions made or acts done are binding as to the subject-matter, and cannot be questioned collaterally, provided they are within the scope of the authority and power conferred. If not void for want of authority, they are final and conclusive except on appeal or other mode of revision, if any such is prescribed by law, or proceedings to annul for fraud."

Whether the act be regarded as strictly judicial or not does not appear to be controlling. The test seems to be whether a discretion is vested in the court or other body or officer, the exercise of which discretion is within the power or jurisdiction of the particular court or body and its power to exercise such discretion rests upon a finding of facts. When such body, having jurisdiction or power to act, provided certain facts exist, finds the existence of such facts and thereupon proceeds to act, its act is conclusive of the existence of such state of facts, at least upon collateral attack, and whether or not its action constitutes a judgment appears to be wholly immaterial.

Other cases cited by respondent, which we find support this conclusion, are State ex inf. v. Fleming, 158 Mo. 558; State ex rel. v. Buerman, 186 Mo. App. 691; State ex inf. McAllister v. Albany Drainage District, 290 Mo. 33; State ex inf. v. Dougan, 264 S. W. (Mo.) 997, and State ex inf. Talbott v. Drain. Dist., 292 Mo. 696.

Relator contends that this proceeding in the nature of *quo warranto* is a direct and not a collateral attack upon the judgment or order of the county court. He cites State ex inf. v. Fleming, 147 Mo. 1; State ex rel. v. Weatherby, 45 Mo. 1. c. 20 (cited by respondent and already considered); State ex inf. Mayfield v. Dougan, 305 Mo. 1. c. 385, and State ex rel. Ponath v. Hamilton, 240 S. W. (Mo.) 1. c. 448.

Several of the cases which we have reviewed hold that a judgment cannot be attacked by *quo warranto* in the absence of allegation and proof of fraud in the procurement of such judgment. [See the late cases of State ex rel. McAllister v. Drainage District, supra; State ex inf. Dougan, supra, and State ex inf. Talbott v. Drainage District, supra.] In the case of State ex rel. v. Fleming, 147 Mo. 1, cited by relator, Judge SHERWOOD held that *quo warranto* may be used to attack a judgment. The necessity for the allegation and proof of fraud was not referred to by Judge SHERWOOD, and he criticized the cases of State v. Weatherby and State v. Powles, from which we have quoted. His opinion appears to be out of harmony with the decisions in this State which hold that a judgment cannot be attacked by *quo warranto* unless such judgment was procured by fraud.

The case of State ex inf. Mayfield v. Dougan, supra, cited by relator to this point, holds that in the absence of a charge of fraud "the record of the county court, reciting its findings authorizing the order of incorporation, is conclusive in a proceeding of this nature. [Citing cases.] If the court erred in its calculations, or in failing or refusing to exclude from the signatures to the petition the names of persons who afterwards signed the remonstrance, such action being judicial, its error, if error was committed, in the rendition of the judgment, cannot be brought to this court for review by the writ of *quo warranto*."

Judge HIGBEE then proceeded to say : "*Quo warranto,* like *certiorari,* is a direct attack upon the sufficiency of the record and is not available as a writ of correction or review, nor a substitute for an appeal. [State ex inf. Crow v. Fleming, 158 Mo. 558.]" It is doubtless because of the words last quoted that the relator cites the Dougan case. That case might aid relator if the record of the county court, made in the course of the proceedings and leading up to the appointment of respondent, as an additional justice of the peace, had disclosed the fact, alleged by relator to be true, that such court had already exhausted its power to make the appointment of respondent because it had previously appointed two additional justices of the peace; but that record discloses no such fact. Relator seeks to challenge the power of the county court to make the appointment by alleging and proving that fact in this court. The Dougan case is not authority for relator's contention; nor does the case of State ex rel. Ponath v. Hamilton, aid relator, so far as we are able to discern.

Relator contends that, in making appointments of county employees, officers and agents, the county court acts ministerially and not judicially. This may be true where no finding of facts on the part of the county court, upon which its very power to make the appointment depends, has to be made. If a duly elected, regular justice of the peace should die or resign, the county court would not be required to ascertain anything, other than that a vacancy had occurred, to authorize it to fill such vacancy by appointment. [Sec. 2692, R. S. 1919.] The making of an appointment in such case would involve no finding of facts giving the county court the power to make the appointment. The statute itself confers such power and requires no finding of facts authorizing the exercise of the power.

None of the cases cited by relator, wherein it is held that in making the appointment the court or officer acts ministerially, is a case wherein the very right to make the appointment depends upon the finding of the existence of a state of facts giving the court or officer the power to make the appointment. Such cases are thus distinguished from the case at bar and need not be separately considered. It cannot be admitted, as seemingly contended by relator, that the county court is bound to make the appointment of an additional justice of the peace whenever the petition required by Section 2689 is presented to it, if it has not already appointed two additional justices of the peace. That section provides that the county court *shall have the power* to make the appointment, but does not require it to make such appointment. Somewhere must rest the duty of determining whether the petition is actually signed by at least twelve qualified voters of the township, residing five miles or more from the nearest justice of the peace, and the duty of finding that the court had not already exhausted its power to appoint. But, even if the petition is signed by sufficient qualified voters having the required places of residence and two additional justices of the peace have not already been appointed, the county court still may exercise its power to appoint by refusing to appoint. Thus the situation provides for the exercise of a discretion on the part of the county court. An act which an officer may do or may not do, in the exercise of his official discretion, cannot be considered a ministerial act.

It is not necessary to lengthen this opinion further in the consideration of cases. We hold that the act of making the appointment of respondent necessarily involved a finding by the count court that such a state of facts existed as to authorize it to appoint an additional justice of the peace, including the finding that two additional justices of the peace had not already been appointed, or, if they had previously been appointed, that both were not qualified and acting at the time. Such finding had the force and effect of a judgment and

cannot be attacked in this proceeding, wherein fraud is neither alleged nor sought to be proven.

It results that the relief prayed for by relator must be denied and the proceeding dismissed. It is so ordered. All concur, except *Graves. J.,* absent; *Ragland, J.,* not sitting.